UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RIETH-RILEY CONSTRUCTION CO., INC.,

       Plaintiff,

                                      CASE NO. 1:25-CV-1269

v.

                                      HON. ROBERT J. JONKER

NATIONAL LABOR RELATIONS BOARD, et al.,

       Defendants,

and

IUOE LOCAL 324,

       Intervenor.

_____ /

## **OPINION AND ORDER**

This is the latest chapter in a long-running labor dispute between Rieth-Riley Construction Co., a Michigan highway construction contractor, and Local 324, International Union of Operating Engineers, AFL-CIO (the Union). This particular case stems from two unfair labor practice (ULP) charges the Union filed with the NLRB in 2023 and 2024 and the administrative hearing on those charges currently scheduled for later this fall. In this federal lawsuit, Rieth-Riley contends the adjudicative proceeding cannot take place because the NLRB structure and hearing process violates the Constitution in two main respects. First, Rieth-Riley contends the NLRB ALJs and the Board members themselves are shielded by statutory removal protections that infringe upon the President's general administrative control of those executing the laws, contrary to Article II. Second, Rieth-Riley also maintains that NLRB's in-house adjudicative process violates Article III

of the United States Constitution because its private rights are at stake.  Rieth-Riley seeks declaratory and injunctive relief on that basis.  (ECF No. 1).

The matter before the Court is on Rieth-Riley's Motion for a Preliminary Injunction that would enjoin the NLRB proceedings on the two ULPs.  (ECF No. 2).  Since that time the Union has intervened as a party under Rule 24 (ECF No. 14) and each party has also filed a dispositive motion.  *See* ECF No. 36 (Union); ECF No. 38 (NLRB); and ECF No. 42 (Rieth-Riley).  The motions are all fully—and comprehensively—briefed.  Oral argument is unnecessary. The Supreme Court's recent decision in *Trump v. Slaughter*, 609 U.S. ___, 2026 WL 1855612 (June 29, 2026) may well mean that the NLRB's structure cannot survive under Article II, but that alone does not translate to a win for Rieth-Riley on the specific relief it seeks here.  For that Rieth-Riley must show that the structural flaws cause harm to Rieth-Riley, something it has not done on this record.  Moreover, the Court agrees with the Union and NLRB that adjudication of the ULPs before the NLRB does not violate Article III.  For these reasons, the Court denies Rieth-Riley's motions and grants the Union and NLRB's motions to the extent consistent with this Opinion and Order.

## BACKGROUND

### 1. *The End of the Collective Bargaining Agreement, Unproductive Negotiations, and Other Litigation.*

Rieth-Riley is a construction company that does business in Indiana and Michigan.  Since 1993, the Union has been the exclusive collective bargaining representative for Rieth-Riley's operating engineers in Michigan. For its part, Rieth-Riley has been represented by the Michigan Infrastructure & Transportation Association (MITA) in negotiations.  The last collective bargaining agreement—called the "Road Agreement"—expired on June 1, 2018.  Initially the Union refused to continue bargaining with the MITA and also with any individual contractor that,

like Rieth-Riley, had a relationship with MITA.  Later that year, however, the Union agreed that it would bargain directly with Rieth-Riley.  But negotiations were not productive, and the Union went on strike at all of Rieth-Riley's Michigan jobsites in July 2019.  The strike continues to this day.  Various scuffles based on ULP allegations and other complaints have taken place in the meantime.  *See, e.g.*, *Rieth-Riley Constr. Co. v. NLRB*, 173 F.4th 269, 273 (6th Cir. 2026); *Rieth-Riley Constr. Co. v. Kerwin*, No. 24-1690, 2025 WL 1304812 (6th Cir. May 6, 2025); *Rieth-Riley Constr. Co. v. NLRB*, 114 F.4th 519, 527 (6th Cir. 2024), *cert. denied,* 145 S. Ct. 1429 (2025); *Rieth-Riley Constr. Co. v. NLRB*, No. 23-1899, 2025 WL 3298085 (6th Cir. Nov. 26, 2025).  The instant lawsuit is the latest skirmish.

### 2.  *This Case*

This case arises from a ULP charge filed by the Union on November 29, 2023.  The Union argued in the charge that Rieth-Riley had unlawfully raised employees' wages without first bargaining with the Union, and that Rieth-Riley had further failed to provide the Union with the information that the company was obliged to provide upon the Union's request.  The following year, Rieth-Riley again raised its bargaining employees' wages without engaging in the bargaining process.  Accordingly, the Union filed a second ULP charge on August 25, 2024.  The two charges were consolidated for a hearing to be conducted before an NLRB ALJ.   The hearing is currently scheduled to begin on October 6, 2026.  Rieth-Riley seeks an injunction preventing the hearing from proceeding.

### 3.  *Statutory and Regulatory Background*

#### A.  *The Four Step Process for Considering Unfair Labor Practice Complaints*

The parties, by and large, agree about how the NLRB is set up to handle ULP complaints. As a general matter, "[t]he National Labor Relations Act (NLRA) prohibits employers and unions

from engaging in certain 'unfair labor practice[s].'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 342 (2024) (citing 29 U.S.C. § 158(a), (b)).  And "[t]he National Labor Relations Board enforces that prohibition." *Id.*  Indeed, Congress created the NLRB in 1935 as an independent agency with the express purpose of "encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection."  29 U.S.C. § 151.  The NLRB "is vested with primary jurisdiction to determine what is or is not an unfair labor practice" and "only the Board may provide affirmative remedies for unfair labor practices[.]" *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83, 86 (1982).

"To evaluate and remedy unfair labor practices, the Board follows a four-step process." *Starbucks Corp.*, 602 U.S. at 357 (Jackson J., concurring in part, dissenting in part, and concurring in the judgment).  "First, a charge is filed and investigated[.]" *Id.*  At this step "any aggrieved party may file a charge with the NLRB alleging any of the unfair labor practices outlined in Section 8" of the NLRA.  *YAPP USA Automotive Sys. Inc. v. NLRB*, 748 F. Supp. 3d 497, 503 (E.D. Mich. 2024); *see also Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 775 (2023) (Board "authority kicks in when a person files a charge with the agency alleging that an unfair labor practice is afoot.").  "Charges are filed with the NLRB Regional Director for the region in which the alleged violation occurred, and that official is responsible for determining if there is sufficient evidence to substantiate a charge[.]" *YAPP USA Automotive Sys. Inc.*, 748 F. Supp. 3d at 503 (internal citation omitted).  At the second step, "[i]f the Regional Director finds that a charge has merit, he or she initiates formal action by issuing a complaint." *Id.* At the third step, "[c]omplaints are adjudicated in a hearing before an ALJ, whose decision may be appealed to the

4

Board." *Id.* (internal citations omitted).[1]  "Finally, if the unfair labor practices alleged in the complaint are sustained, the Board can seek enforcement of the order, and any aggrieved party can seek review, in a federal court of appeals."  *Starbucks Corp.*, 602 U.S. at 357 (Jackson J., concurring in part, dissenting in part, and concurring in the judgment) (citing 29 U.S.C. § 160(e), (f); 29 C.F.R. § 101.14).[2]

### B. Roles, Responsibilities, and Removal of NLRB Board Members and ALJs

Under the NLRA, the Board itself is made up of five members "appointed by the President by and with the advice and consent of the Senate." 29 U.S.C. § 153(a).  The Board's primary duty "is to enforce the [NLRA], a task that it carries out (almost) exclusively by adjudicating labor disputes." *Alivio Medical Center v. Abruzzo*, No. 24-cv-7217, 2024 WL 4188068, at *2 (N.D. Ill. Sept. 13, 2024). (citing *Cortes v. NLRB,* No. 23-2954, 2024 WL 1555877, at *1 (D.D.C. Apr. 10, 2024)); *see also Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 216 (1964).  The NLRA restricts the President's removal power of Board members by providing they are removable by the President, "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause."  *Id.*  But as the parties recognize, this limitation has been expressly tested after President Trump removed a Board member without specifying a qualifying cause.  *See Trump v. Wilcox*, 145 S. Ct. 1415 (2025).  In that decision, the Supreme Court stayed a district court's order requiring

---

[1] The Board may also preside over such proceedings directly themselves.  *See* 29 C.F.R. § 102.50.
[2] Accordingly, for the most part, labor disputes are resolved administratively and federal courts become involved only to the extent the Board seeks enforcement in the Court of Appeals.  *See Kobell v. United Paperworkers Int'l Union, AFL-CIO, CLC*, 965 F.2d 1401, 1406 (6th Cir. 1992); *see also Starbucks Corp.*, 602 U.S. at 343 (majority opinion).  But because the administrative process at times unfolds slowly, "interim injunctive relief occasionally may be necessary to preserve the remedial power of the Board . . . pending the Board's substantive review of [alleged unfair labor practices]."  *Kobell*, 955 F.2d at 1406. Accordingly, the NLRB has the power and discretion to seek a Section 10(j) motion in federal district court.  *See generally Starbucks Corp.*, 602 U.S. at 358-59 (Jackson J., concurring in part, dissenting in part, and concurring in the judgment) (discussing the framework).

reinstatement on the basis that the Government was likely to succeed on the merits of its claim that the President's executive power allowed him to terminate NLRB members without cause. In particular, the Court determined the NLRB exercised considerable executive power. *Id.* And in general terms, this means that the President should be permitted to "select those who . . . act for him" and "remov[e] those for whom he can not continue to be responsible." *See Trump v. Slaughter*, 609 U.S. ___, 2026 WL 1855612, at *5 (quoting *Myers v. United States*, 272 U.S. 52 (1926)); *see also Seila Law LLC v. CFPB*, 591 U.S. 197, 215-18 (2020). The Court did not decide in *Wilcox* whether the NLRB fell within any recognized exception to the President's ability to remove executive officers without cause. But the Court subsequently determined in *Slaughter* that the exception the Union relies upon here—*Humphrey's Executor*—is no longer good law. Between the Court's decision in *Wilcox* staying the district court's order, and the Court's decision in *Slaughter*, the D.C. District Court has determined that the removal restrictions on NLRB members are unconstitutional. *See Harris v. Bessent*, 160 F.4th 1235 (D.C. Cir. Dec. 5, 2025), *petition for cert. filed* No. 26-5 (July 1, 2026).

The role of NLRB ALJs is also defined by statute. They are "appointed by the five-member Board in accordance with the Civil Service Reform Act and the NLRA." *Alivio Medical Center*, 2024 WL 4188068 at *3 (internal citation omitted). The ALJs are tasked with "inquir[ing] fully into the facts as to whether [a defendant] has engaged in or is engaging in an unfair labor practice affecting commerce as set forth in the complaint." *Id.* (quoting 29 C.F.R. § 102.35(a)). To that end, NLRB ALJs have a wide range of power including to administer oaths and affirmations, grant and revoke subpoenas, and resolve motions. *See id.* (discussing 29 C.F.R. § 102.35(a)(1)-(13)). This authority culminates with the ability to issue a decision that "will contain findings of fact, conclusions of law, and the reasons or grounds for the findings and conclusions, and

6

recommendations for the proper disposition of the case." 29 C.F.R. § 102.45. From there, exceptions may be taken to the Board.

"Removal of NLRB ALJs involves a two-step process prescribed by statute: (1) the Board must bring an action to remove an ALJ; and (2) the Merit Systems Protection Board ("MSPB"), an independent federal agency, must then determine that good cause for removal has been established." *Alivio Medical Center*, 2024 WL 4188068 at *3 (citing 5 U.S.C. § 7521(a)). "As for the members of the MSPB," in turn "they may only be removed for 'inefficiency, neglect of duty, or malfeasance in office.'" *Id.* (quoting 5 U.S.C. § 1202(d)). Accordingly, as Rieth-Riley puts it, the NLRB ALJs are nested within at least two layers of statutory removal protections.

### LEGAL STANDARDS

The various motions implicate a variety of well-known rules and corresponding legal standards. Rieth-Riley's motion for preliminary injunction, for example, implicates the four factors set out in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The dispositive motions depend on various provisions in Rule 12 and Rule 56. The Union and the NLRB, for example, reference Rule 12(c) and 12(b)(6). FED. R. CIV. P. 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Courts analyze motions for judgment on the pleadings under the same standards as motions to dismiss under FED. R. CIV. P. 12(b)(6). *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012). Consequently, to survive a motion for judgment on the pleadings, a plaintiff must allege facts that—taken as true by the Court—are sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement is satisfied if the well-pleaded factual allegations "allow[] the court to draw the reasonable inference that the defendant liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

7

Rieth-Riley and the NLRB also refer to the summary judgment standard for Rule 56.  Under this rule, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984)). In reviewing a motion for summary judgment, a court must assume the truth of the non-moving party's evidence and make all reasonable inferences from that evidence in the light most favorable to the non-moving party. *March v. Levine*, 249 F.3d 462, 471 (6th Cir. 2001).

## DISCUSSION

### 1.  *Rieth-Riley's Removal Challenges (Counts I and II)*

The first two Counts of Rieth-Riley's Complaint relate to the statutory removal protections applicable to NLRB ALJs and the Board members themselves.  Rieth-Riley contends these protections violate Article II of the Constitution because they inhibit the President's ability to carry out the general administrative control of those executing the laws.  The Union's position across the briefing is that these protections survive constitutional scrutiny.  The NLRB does not go that far, but it contends that—to the extent there is any defect with the statutory structure—there are a number of considerations that either partially or completely preclude the relief requested.  In particular, the NLRB argues (and the Union does too) that Rieth-Riley cannot establish any harm caused by the removal protections—which is a necessary showing in the Sixth Circuit for relief. This argument has merit.

8

"In recent years, the Supreme Court has addressed several statutory schemes that shield executive officers from at-will removal by the President." *YAPP USA Automotive Sys. Inc. v. NLRB*, No. 24-1754, 2024 WL 4489598, at \*2 (6th Cir. Oct. 13, 2024) (citing *Collins v. Yellen*, 594 U.S. 220 (2021); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020); and *Free Enter. Fund v. Public. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010)). The latest addition to this list was decided by the Court last month in *Trump v. Slaughter*, 609 U.S. ___, 2026 WL 1855612 (June 29, 2026). The dual-layer removal protections for executive agency ALJs have also been extensively examined. *See, e.g., Space Expl. Techs. Corp. v. NLRB*, 151 F.4th 761, 775 (5th Cir. 2025); *YAPP USA Automotive Sys. Inc.,* 748 F. Supp. 3d at 509; *Overstreet v. Lucid USA Inc.*, No. CV-24-01356, 2024 WL 5200484, at \*7 (D. Ariz. Dec. 23, 2024); *Alivio Medical Center*, 2024 WL 4188068, at \*5-\*6. Accordingly, the Court does not tread new ground with respect to these separations of powers questions. In fact, this Court has previously examined a similar challenge in *Kerwin v. Trinity Health Grand Haven Hosp.*, No. 1:24-CV-445, 2024 WL 4594709 (W.D. Mich. Oct. 25, 2024). As here, that case involved a constitutional challenge to the dual-layer removal protections of executive agency ALJs. In *Kerwin*, the Court determined that it is not enough that a plaintiff identify an unconstitutional provision. Rather, a particular showing of harm is required. Ultimately the claimant in *Kerwin* could not make that showing, and the Court concludes that Rieth-Riley has not made the necessary showing here either.

"Under Supreme Court and Sixth Circuit precedent, a party challenging an agency's removal protection scheme 'is not entitled to relief unless that unconstitutional provision inflicts compensable harm.'" *YAPP USA Automotive Sys. Inc.*, 2024 WL 4489598 at \*2 (6th Cir. Oct. 13, 2024) (quoting *Calcutt v. FDIC*, 37 F.4th 293, 310 (6th Cir. 2022)) (internal quotation marks and alterations omitted). And a "bare claim" of illegitimacy is not enough. *Id.* at \*3. Rather, the

9

plaintiff must make a showing that the alleged unconstitutional protections "'prevent[ed] superior officers from removing Board members when they attempted to do so' or 'alter[ed] the Board's behavior' prior to the proceeding" or that "'but for the allegedly unconstitutional removal provisions the [NLRB Board members] or [the NLRB ALJ] would have been removed, the [NLRB] proceedings against it would not be occurring, or the proceedings would be different in any way.'" *Id.* (quoting *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 757 (10th Cir. 2024) (alterations in *Yapp USA Automotive*)).

Moreover, harm is a requisite element regardless of whether the plaintiff is seeking prospective or retrospective relief.  In *Kerwin*, the Court determined that it was of no moment that the plaintiff, like Rieth-Riley here, was seeking prospective relief because the panel's decision in *Yapp USA Automotive Sys. Inc.* "explicitly stated that the distinction between prospective and retrospective relief 'does not matter.'"  *Kerwin*, 2024 WL 4594709, at *5 (quoting *Yapp USA Automotive Sys. Inc.*, 2024 WL 4489598, at *3).  Applying *Calcutt*, the Court of Appeals in *Yapp USA Automotive* noted two points: "First, a party challenging the constitutionality of an agency's removal protection scheme cannot simply show that the agency's action caused—or will cause—harm. Instead, 'the constitutional violation must have *caused* the harm.'" *Yapp USA Automotive Sys. Inc.*, 2024 WL 4489598, at *3 (quoting *Calcutt*, 37 F.4th at 316). "Second, a challenger cannot rely on 'vague, generalized allegations' of harm; 'a more concrete showing [i]s needed.'" *Id.* (quoting *Calcutt*, 37 F.4th at 317). "In short, a challenger 'would need to show that the removal restriction *specifically* impacted the agency actions of which they complain.'" *Id.*  (quoting *Calcutt*, 37 F.4th at 315) (emphasis in original).

Rieth-Riley has not made this type of showing.  It has not argued that the removal protections for the NLRB Board members or NLRB ALJs would "specifically impact[ ]" the

scheduled hearing.  *See Calcutt*, 37 F.4th at 315.  Instead, it argues such a showing is unnecessary. It acknowledges *Kerwin* and *Yapp USA Automotive*, but argues for a different result in this case based on what it says are distinguishing procedural characteristics.  In the main, Rieth-Riley says the Court need not follow the unpublished panel decision in *Yapp Automotive Systems*, and that the panel's decision is not persuasive either because it overreads *Calcutt*.  The company, Rieth-Riley says, is not challenging the prospective effect of the agency's order but rather is seeking to stop the agency from issuing an order in the first place.  It says the Fifth Circuit's decision in *Space Expl. Techs.* has the better analysis, one that determined in a pre-enforcement challenge that no further showing of harm is necessary because the harm "is the process itself."  *See Space Expl. Techs. Corp. v. NLRB*, 151 F.4th 761, 771 (5th Cir. 2025) (upholding preliminary injunction enjoining NLRB proceedings).  In other words, "once an unconstitutional proceeding begins, the damage is done."  *Id.* at 780.  The Court respectfully disagrees with this reasoning.

The Sixth Circuit's decisions in *Calcutt* and *Yapp USA Automotive* both follow from the Supreme Court's decision in *Collins v. Yellen*, 594 U.S. 220 (2021) where the Court distinguished between appointments and removal challenges.  With respect to the latter type of challenge (the one raised here), the Court found "no reason to regard any of the actions taken by [a properly appointed executive officer] . . . as void" based on an unconstitutional removal protection.  *Id.* at 257-58.   Put differently, "unconstitutional removal protection may diminish a person's accountability for his actions, but not necessarily his authority to take such actions."  *Care One, LLC v. NLRB*, 166 F.4th 335, 346 (2d Cir. 2026).  This is why a showing of harm, as explained in *Calcutt* and *Yapp USA Automotive*, is necessary to state an actionable claim.  *See Space Expl. Techs. Corp.*, 151 F.4th at 781 (Wiener, J., concurring in part and dissenting in part) (noting with respect to causal harm the decision creates a split with the Sixth Circuit as well as the Tenth and

11

Second Circuits).   This logic, furthermore, applies with equal force regardless of whether a claimant is seeking forwards or backwards facing relief.

That leaves Rieth-Riley's contention that the Supreme Court recognized harm in "being subjected to unconstitutional agency authority" in *Axon Enters., Inc. v. FTC*, 598 U.S. 175 (2023). But as the panel discussed in *Yapp USA Automotive*, that case is not as broad as Rieth-Riley reads it, and "did not overrule *Collins*—or, by extension, *Calcutt*."  *Yapp USA Automotive Sys. Inc.*, 2024 WL 4489598, at *3; *see also Space Expl. Techs. Corp.*, 151 F.4th at 783-86 (Wiener, J., concurring in part and dissenting in part) (disagreeing with majority that *Axon* means *Collins* only applies to cases where a party seeks retrospective relief.).

For this reason, the Court concludes that Rieth-Riley has failed to demonstrate the requisite causal harm that is necessary for the relief it seeks here based on the agency's removal protection scheme.   Rieth-Riley's motions with respect to the removability claims are denied, and the Union and NLRB's motions granted, for this reason.   This conclusion makes it unnecessary to reach the parties' other threshold contentions (such as whether the Norris-LaGuardia Act applies to preclude injunctive relief) and merits-based arguments.

### 2.  *Rieth-Riley's Agency Adjudication Challenge under Article III*

Rieth-Riley's remaining claim is that the NLRB's in-house adjudication of the Union's ULPs violates Article III of the Constitution.  The Union and NLRB agree that their arguments with respect to causal harm do not apply to this claim.  But they seek dismissal on two other principal grounds. First, the NLRB contends that Rieth-Riley has failed to establish subject-matter jurisdiction over a non-structural, as applied claim about the remedies the NLRB might one day order in the ULP challenges.  Second, both the NLRB and the Union contend the Article III claim

lacks merit predominately based on the public-rights doctrine that in their view protects the two ULP charges.

### A. Jurisdiction

The Court starts with the NLRB's jurisdictional argument. "District courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Sometimes, however, a "special statutory review scheme . . . may preclude district courts from exercising jurisdiction over challenges to federal agency action." *Axon*, 598 U.S. at 185. In this case, the NLRA expresses Congress's intent to limit district court jurisdiction to review ULPs. Instead, "the proceedings go to the Board, and then the Board's final order is appealable to an appropriate federal court of appeals." *YAPP USA Auto. Sys., Inc. v. Nat'l Lab. Rels. Bd.*, 748 F. Supp. 3d 497, 512 (E.D. Mich. 2024) (citing 29 U.S.C. § 160(f)).

Nevertheless, Rieth-Riley argues that its claims are not "of the type Congress intended to be reviewed within this statutory structure." (ECF No. 41, PageID.516) (quoting *Axon*, 598 U.S. 186). To examine whether this is so, the Court is guided by what are commonly termed the *Thunder Basin* factors. Specifically, the Court must consider the following:

> First, could precluding district court jurisdiction foreclose all meaningful judicial review of the claim? Next, is the claim wholly collateral to the statute's review provisions? And last, is the claim outside the agency's expertise?

*Axon*, 598 U.S. at 186 (internal quotation marks and citations to *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) omitted). "When the answer to all three questions is yes, [courts] 'presume that Congress does not intend to limit jurisdiction.'" *Id.* (quoting *Free Enterprise Fund*, 561 U.S. 477, 489 (2010)).

Applying these factors, a number of district courts within this circuit have determined they lack jurisdiction to review constitutional challenges to pending administrative enforcement

proceedings based on structural Article III issues and Seventh Amendment challenges. *See, e.g.*, *Millennia Hous. Mgmt. v. United States Dep't of Hous. & Urb. Dev.*, 783 F. Supp. 3d 1051, 1064 (N.D. Ohio 2025); *YAPP USA Auto. Sys., Inc. v. NLRB*, 748 F. Supp. 3d 497, 513 (E.D. Mich. 2024). As these decisions persuasively explain, the *Thunder Basin* considerations lead to the conclusion that the Court should enforce Congressional intent to limit the subject-matter jurisdiction of the district court in this case.

To begin, the answer to the first *Thunder Basin* question is "no" because leaving the district court out of Rieth-Riley's Article III challenge here does not foreclose all avenues of meaningful judicial review. If and when the ALJ issues a ruling against Rieth-Riley, the company will be able to challenge that ruling before the Board, and ultimately in the United States Court of Appeals. In this way, meaningful judicial review remains available if and when the ALJ rules against Rieth-Riley, all "without disturbing the otherwise valid administrative process—exactly as Congress intended." *Yapp USA Auto. Sys., Inc.*, 748 F. Supp. 3d at 513. The Court sees the alleged injury here as one pertaining to a potential remedy that the ALJ may potentially order at the conclusion of the hearing, not alleged harm tied to the structural requirements of Article III. *C.f. Millennia Hous. Mgmt.*, 783 F. Supp. 3d at 1065 (rejecting challenging party's framing of Seventh Amendment jury claim as going to the structure of the agency and noting the alleged injury is instead "a challenge to the specific remedy being sought."). If and when an ALJ orders any concrete relief against Rieth-Riley, the company will be able to raise its Article II arguments to the Board, and then to a federal court of appeals established under Article III. If there is any structural harm based on the remedy order, the federal court of appeals will remedy it.

Rieth-Riley protests that judicial review after an adverse ruling is insufficient because its claim is about being subjected to an illegitimate proceeding, led by an illegitimate decisionmaker.

But that is what is alleged in the other two counts, addressing Article II claims. And in any event, as the Court explained above, Rieth-Riley's challenge is about the removal protections, not any infirmity in the appointment of the ALJ or the ALJ's legitimacy. Rieth-Riley says *Axon* directs otherwise. But *Axon* did not involve an Article III challenge, and so its reasoning does not apply to this claim. *See Millennia Hous. Mgmt.*, 783 F. Supp. 3d at 1065.

So the answer to the first *Thunder Basin* factor as applied to this case is "no." And the Court further concludes the remaining two questions are answered in the same way. A determination concerning the remedy based on ULP charges is not collateral to the NLRB proceedings. And the Board plainly has expertise to craft remedies for ULPs, should any remedies even be necessary. Accordingly, all the *Thunder Basin* factors weigh against jurisdiction here, and the Court determines it lacks jurisdiction to consider Rieth-Riley's Article III argument.

> B. *Merits*

But even if the Court is wrong on the jurisdictional point, the Court concludes that the NLRB and Union's motions to dismiss this claim can also be granted on the merits.

The argument Rieth-Riley makes here is that following *Jarkesy*, the administrative adjudication of the Union's ULPs is inconsistent with Article III of the Constitution. Article III provides that "[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Rieth-Riley contends that command is not followed here because the judicial power will be exercised by the executive in the adjudicative hearing on the Union's ULPs. It points out that in *Stern v. Marshall*, 564 U.S. 462 (2011), the Court detailed that to protect the purpose behind our system of checks and balances, "Congress may not 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.'" *Id.* at 484 (quoting

15

*Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 18 How. 272, 284 (1856)). And "[w]hen a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,' and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." *Id.* (quoting *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S 50, 90 (1982) (Rehnquist, J., concurring in the judgment)).

For this reason, the Court stated in *Jarkesy*, the Supreme Court has "repeatedly explained that matters concerning private rights may not be removed from Article III courts" and that "[i]f a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory." *SEC v. Jarkesy*, 603 U.S. 109, 127-28 (2011) (citations omitted). At the same time, the Court recognized, and did not abrogate, its precedents over those classes of cases constituting "public rights" that it acknowledged was an exception to the Article III requirement. *Id.* at 128. But as the Sixth Circuit Court of Appeals would later comment, this doctrine has "sharp limits" and extends "'only to matters arising between individuals and the Government in connection with the performance of constitutional functions of the executive or legislative departments that historically could have been determined exclusively by those branches.'" *NLRB v. Starbucks Corp.*, 159 F.4th 455, 481 (6th Cir 2025) (quoting *Stern*, 564 U.S. at 485)). This means that "instead of asking only whether an asserted right derives from common law or Congress, courts must also examine the given proceeding's 'nature' to determine whether an agency is impermissibly adjudicating private rights.'" *Id.* (citing *Jarkesy*, 603 U.S. at 128). For example, in *Jarkesy*, the Court observed that the collection of revenue, immigration, foreign commerce, and tariffs, were all matters concerning public rights.

*See Jarkesy*, 603 U.S. at 128-30; *see also* Caleb Nelson, *Adjudication in the Political Branches*, 107 Colum. L. Rev. 559, 566-68 (2007) (distinguishing between private and public rights).

The Court is satisfied that the collective bargaining regimen of the LMRA and the NLRA—including the ULP enterprise that polices the bargaining process—really are a form of public right.  Collective bargaining was prohibited at common law, as the NLRB argues in its motion. (ECF No 39, PageID.456-87); *see, e.g.*, *Agwilines, Inc., v. NLRB*, 87 F.2d 146, 150 (5th Cir. 1936) ("The prohibitions against interference by employers with self-organization of employees were not only unknown, they were obnoxious."). Indeed, strikes or other forms of collective action landed laborites in jail, or at least exposed them to that risk.  The whole array of protections was really a new and incredibly controversial enterprise.  Congress itself was clear in articulating the overall purpose of the new rights and responsibilities as part of an effort to achieve labor peace and the free flow of commerce, which are both public purposes.  29 U.S.C. §§ 141, 151.

Rieth-Riley contends that whether Congress proscribes some act that wasn't previously proscribed or protects as a right something that the common law never granted is not dispositive of whether the proscription or right maintains a common-law character.  And true, in *Jarkesy*, the Court stated that "Congress cannot 'conjure away the Seventh Amendment by mandating that traditional legal claims be . . . taken to an administrative tribunal.'"  *Jarkesy*, 603 U.S. at 135 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989)).  But that is not what the Court sees here.  The relief requested in the ULPs is directly linked to policing the new regimen of collective bargaining.  There cannot be an effective program of collective bargaining if employers are free to do end runs of the process by taking unilateral action on subjects that are supposed to be on the bargaining table. And there furthermore cannot be meaningful bargaining without adequate information on expenses, revenues and profits of the enterprise.  So even if there are

17

common law analogues to the form of relief—like recission or bills of discovery—they operated in entirely different ways because, once again, there was nothing like collective bargaining in existence. Individual employees certainly did not have any bill of discovery available to address their personal wage and hour concerns. And recission for undue influence or duress bears at most superficial resemblance to undoing private deals between an employer and employees because the employees have an exclusive representative who was cut out of the process.

This reasoning distinguishes the Third Circuit's decision in *Sun Valley Orchards LLC v. U.S. Dep't of Lab.*, 148 F.4th 121, 124 (3d Cir. 2025) that is cited by Rieth-Riley. In that case, a New Jersey farm hired dozens of seasonal laborers through the H-2A nonimmigrant visa program. Given the intersection of both immigration and labor spheres, the program was administered jointly with the Department of Labor and the Department of Homeland Security. The farm made a number of promises to the laborers, including that there would be at least forty-hours of work for the employment term, no-cost housing, free transportation, and free cooking and kitchen facilities. The Department of Labor determined the farm did not honor those promises, and assessed hundreds of thousands of dollars in penalties and back wages. The farm requested a hearing before an ALJ, and the ALJ largely agreed with the Department of Labor, only departing slightly when it came to the penalty and back wage amounts. The farm then filed a federal lawsuit alleging, in relevant part, that the Department of Labor had adjudicated its private rights in violation of Article III. *See id.* at 125-27. The Third Circuit Court of Appeals found that the public rights exception did not apply. The court determined the enforcement action sounded not in the immigration regulations, but rather in contractual terms—the promises made in the job order functioned as a work contract between the employer and the laborer. *Id.* at 128. The agency action was adjudicated, then, like a suit for breach of contract, which could have traditionally been heard in

18

common law courts. *Id.* at 129-131.  That's not what the Court sees here, as the ULP claims do not have common-law roots.  To the contrary, the whole collective bargaining process was a new development designed to allow workers to negotiate terms and conditions as a group, if and when they believed it would yield better results than private one-on-one contractual arrangements.  The Court is satisfied, therefore, that the public rights exception is met, and the NLRB and the Union's motions to dismiss this claim should be granted on this basis.

## CONCLUSION

The parties have presented myriad arguments across several rounds of motions.  At bottom, the Court determines that this case can be resolved on two basic points.  The NLRB and Union are entitled to dismissal of the two Article II claims because Plaintiff has not plausibly alleged harm caused by any Article II structural flaws, which is a necessary component of its claims.  And even if the Court has jurisdiction to consider Rieth-Riley's Article III claim, the NLRB and Union are entitled to dismissal based on the public rights exception.

**ACCORDINGLY, IT IS ORDERED** that Rieth-Riley's Motion for Preliminary Injunction (ECF No. 2) is **DENIED.**

**IT IS FURTHER ORDERED** that the Union's Motion to Dismiss (ECF No. 36) is **GRANTED** to the extent specified in this Opinion and Order.

**IT IS FURTHER ORDERED** that the NLRB's Motion to Dismiss, or in the alternative, for Summary Judgment (ECF No. 38) is **GRANTED** to the extent specified in this Opinion and Order.

**IT IS FURTHER ORDERED** that Rieth-Riley's Cross Motion for Summary Judgment (ECF No. 42) is **DENIED.**

19

This case is **CLOSED.**  A separate Judgment shall enter.


Dated:   July 22, 2026                        /s/ Robert J. Jonker
                                              ROBERT J. JONKER
                                              UNITED STATES DISTRICT JUDGE